# IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

**COURTENEY EDWARDS,**
7932 Suiter Way
Hyattsville, Maryland 20785

      Plaintiff,

v.

**STATE OF MARYLAND**
<u>Serve on</u>:
The Honorable Dereck E. Davis
State of Maryland Treasurer's Office
80 Calvert Street
Annapolis, Maryland 21401

**PRINCE GEORGE'S COUNTY,
MARYLAND**
<u>Serve on</u>:
Jared M. McCarthy
Resident Agent
Deputy Chief Administrative Officer
1301 McCormick Drive, Suite 4000
Largo, Maryland 20774

and

**SHERIFF MELVIN C. HIGH
OF THE PRINCE GEORGE'S
COUNTY SHERIFF'S OFFICE**
Individually, and in his Official
Capacity as the Sheriff of Prince George's
County
Prince George's County Sheriff's Office
5303 Chrysler Way
Upper Marlboro, Maryland 20772

**CORPORAL MCGRIFF (BADGE #286)
OF THE PRINCE GEORGE'S
COUNTY SHERIFF'S OFFICE**
Individually, and in her Official

**CASE NO.:** *CAL22-16573*

CLERK OF THE
CIRCUIT COURT
2022 MAY 26 PM 2:41
PR GEO CO MD #57

Case: CAL22-16573
NEW CASE
APP FEE PLAIN          10.00
CV CLERK FEE-          80.00
MD LEGAL SERV          55.00
RIF - NEW CAS          30.00
TOTAL                 175.00
Recpt PG20    Rcpt # 55557
MEL   JCD     Blk # 1511
May 26, 2022        03:00 PM



1

Capacity as a Prince George's County    :
Deputy Sheriff                                   :
Prince George's County Sheriff's Office  :
5303 Chrysler Way                           :
Upper Marlboro, Maryland 20772     :

                                             :

and                                           :

**DEPUTY FIRST CLASS FOGARTY**    :
**(BADGE #516)**                             :
**OF THE PRINCE GEORGE'S**      :
**COUNTY SHERIFF'S OFFICE**     :
Individually, and in his Official       :
Capacity as a Prince George's County  :
Deputy Sheriff                                  :
Prince George's County Sheriff's Office  :
5303 Chrysler Way                           :
Upper Marlboro, Maryland 20772     :

                                           :

      Defendants.                        :

---

## COMPLAINT AND JURY DEMAND

      COMES NOW, the Plaintiff, Courteney Edwards, by and through undersigned counsel, Timothy F. Maloney, Esq. and Joseph, Greenwald & Laake, P.A., and sues the Defendants: State of Maryland, Prince George's County, Maryland, Prince George's County Sheriff Melvin C. High, and Corporal McGriff (Badge #286) and Deputy First Class Fogarty (Badge #516) of the Prince George's County Sheriff's Office, and for cause states as follows:

## JURISDICTION AND VENUE

      1.      This Court has jurisdiction over this action pursuant to Md. Code Ann. § 1-501 of the Courts and Judicial Proceedings Article (C.J.P.).

      2.      This Court has jurisdiction over the subject matter and all parties pursuant to C.J.P. § 6-102 and C.J.P. 6-103.

2

3.     Venue is proper pursuant to C.J.P. 6-201 as all material events occurred, and all parties reside, carry on business, or are employed in Prince George's County, Maryland.

**NOTICE**

4.     Plaintiff provided notice of her claims to the Prince George's County Attorney, the Maryland State Treasurer, and the Prince George's County Sheriff's Office, via certified mail, facsimile, and electronic mail, on June 16, 2020.

**PARTIES**

5.     Plaintiff Courteney Edwards is the aggrieved party in this suit and is an adult resident of Prince George's County, Maryland.

6.     Defendant State of Maryland ("the State") employs county sheriffs and deputy sheriffs as state constitutional officers subject to the control of the Maryland General Assembly. *See Rucker v. Hartford Cty.*, 316 Md. 275, 558 A.2d 399 (1989).  Additionally, county sheriffs perform certain law enforcement, security, and other functions on behalf of their respective county governments, including that of Prince George's County.  As such, county sheriffs and their subordinate deputy sheriffs perform both state and county functions and, through their actions as hybrid officers of both entities, subject both the State and their respective counties to liability.

7.     Defendant Sheriff Melvin C. High ("Sheriff High") is the Sheriff of Prince George's County, a State constitutional office to which he was elected pursuant to Art. IV, § 44 of the Maryland Constitution.  In that capacity, and as a hybrid officer acting on behalf of the State and Prince George's County, Sheriff High performs duties and functions for both the State and the County, including crafting the policies of the Prince George's County Sheriff's Office and ensuring that the Office's policies are followed by its personnel.

8.     Defendant Corporal McGriff (Badge #286) ("Corporal McGriff") is employed as a dual agent of the State and Prince George's County in her capacity as a sworn deputy sheriff of the Prince George's County Sheriff's Office.

9.     Deputy First Class Fogarty (Badge #516) ("DFC Fogarty") is employed as a dual agent of the State and Prince George's County in his capacity as a sworn deputy sheriff of the Prince George's County Sheriff's Office.

10.    Defendant Prince George's County, Maryland ("the County") is a municipal corporation organized under the provisions of Art. XI-A of the Maryland Constitution.

11.    The County is properly a defendant to this action as it has a statutory obligation, under Md. Code Ann. § 9-108 of the State Finance and Procurement Article, to insure, defend, and indemnify for torts committed by any sheriff or deputy sheriff when they purport to have performed a law enforcement function, and because the sheriff and deputy sheriffs perform functions on behalf of both the County and the State.

## FACTS

12.    On or about May 28, 2019, Ms. Edwards was staying at the WoodSpring Suites in Prince George's County, Maryland with her then-boyfriend Hakeem Famudi.

13.    After Ms. Edwards and Mr. Famudi had been involved in an argument, officers of the Prince George's County Sheriff's Office responded to their hotel room. Specifically, the officers who responded were Corporal McGriff and DFC Fogarty (collectively "the Officer Defendants").

14.    At the time of the officers' arrival, Mr. Famudi was about to leave the hotel in order to go to work, however, Ms. Edwards advised that she still had a number of belongings in

4

Mr. Famudi's car, so the Officer Defendants accompanied her to the parking lot in order to allow her to retrieve her property from the vehicle.

15.     As she was making her way through the hotel en route to Mr. Famudi's vehicle, Ms. Edwards experienced a significant flare up of her asthma, which, coupled with the stress brought on by the presence of the Officer Defendants, left her struggling to breathe.  Ms. Edwards explained her condition to the Officer Defendants, who then called for an ambulance.

16.     Subsequently, with the ambulance on its way, Ms. Edwards, Mr. Famudi, and the Officer Defendants continued making their way to Mr. Famudi's vehicle.  After arriving at Mr. Famudi's vehicle, Ms. Edwards began removing her property.  As this was occurring, Ms. Edwards noticed DFC Fogarty putting on gloves and asked why he was doing so.  Immediately after Ms. Edwards' query about the officer's need for gloves, and without providing any answer, DFC Fogarty approached and began to physically restrain Ms. Edwards by forcefully holding her arms behind her back.  In restraining Ms. Edwards, DFC Fogarty acted without any provocation, probable cause, threat to officer or public safety, or legal justification.

17.     As DFC Fogarty physically subdued Ms. Edwards, she repeatedly asked why she was being restrained and whether she was being placed under arrest; DFC Fogarty's only response, presumably regarding whether Ms. Edwards was under arrest, was "no."

18.     Seeing DFC Fogarty's treatment of Ms. Edwards, Mr. Famudi attempted to intervene, but was advised by Corporal McGriff that he needed to drive away and go to work; Mr. Famudi then complied with Corporal McGriff's direction.

19.     At that point, Corporal McGriff put on gloves and began restraining Ms. Edwards in order to free up DFC Fogarty.  In restraining Ms. Edwards, Corporal McGriff acted without provocation, probable cause, threat to officer or public safety, or legal justification.

20.     DFC Fogarty then picked up the two bins of clothing Ms. Edwards had retrieved from Mr. Famudi's car and threw them aside so that their contents spilled out onto the ground.

21.     Following the scattering of Ms. Edwards' possessions, Corporal McGriff shoved Ms. Edwards in the direction of her property without cause or legal justification, and then began walking with DFC Fogarty toward their police vehicle.

22.     As the Officer Defendants were leaving, Ms. Edwards made a gesture indicating that she was waving them away. After observing the gesture made by Ms. Edwards, Corporal McGriff doubled back toward Ms. Edwards, punched her in the face with enough force to knock her off her feet, and then continued to punch Ms. Edwards in the face several more times as she lay on the ground. Corporal McGriff's pummeling of Ms. Edwards was without legal justification and did not serve any law enforcement purpose, nor was it in response to any provocation or threat. Corporal McGriff's actions were motivated by her anger, malice, and an intent to harm Ms. Edwards.

23.     Thereafter, when Ms. Edwards attempted to record video of the Officer Defendants with her cellphone, Corporal McGriff slapped Ms. Edwards' phone from her hand. When Ms. Edwards picked up her cellphone and made a second attempt to record the Officer Defendants, Corporal McGriff stood facing Ms. Edwards and put her hand on her service weapon, a gesture that Ms. Edwards viewed as a threat that Corporal McGriff was prepared to employ deadly force if Ms. Edwards proceeded to record the officers. Corporal McGriff's clear threat of deadly force was not in response to any danger or provocation, nor did it serve any law enforcement purpose, instead it was a malicious act taken with the intent of terrorizing and intimidating Ms. Edwards.

24.     DFC Fogarty observed Corporal McGriff's actions, grabbed her by the shoulder, and advised her that they needed to leave as they had previously set out to do.

25.     After the Officer Defendants made it back to their vehicle, the ambulance that had been summoned for Ms. Edwards arrived on the scene and pulled up alongside the Officer Defendants. Ms. Edwards observed the Officer Defendants have an exchange with the ambulance personnel, and then watched the ambulance drive away without anyone ever seeking, evaluating, or treating her for her asthma-related shortness of breath or the injuries she had freshly sustained from the battering she received at the hands of Corporal McGriff.

26.     The conduct of the Defendant Officers as set forth herein was without legal justification, and was motivated by anger, malice, and a desire to harm the plaintiff.

27.     Following the departure of the ambulance, the Officer Defendants also left the scene.

28.     Despite having been physically restrained and battered by the Officer Defendants, Ms. Edwards was never arrested or charged with any criminal offenses stemming from the events of May 28, 2019.

29.     After the Officer Defendants' departure, Ms. Edwards called 911, requested a second ambulance, and told the 911 dispatcher about how the Officer Defendants restrained and beat her. Shortly thereafter, the second ambulance arrived on-scene and took Ms. Edwards to University of Maryland Prince George's Hospital Center, where she received treatment for the injuries to her face and eye.

30.     While at the hospital, Ms. Edwards spoke with personnel from the Internal Affairs Division of the Prince George's County Sheriff's Office ("Internal Affairs"), who took Ms.

7

Edwards' account of being unjustifiably restrained and beaten by the Officer Defendants and documented it in an Internal Affairs report, case number 19-X-649.

31.     Subsequently, in the course of the Internal Affairs investigation into the allegations contained in Ms. Edwards' report, Internal Affairs investigators interviewed Ms. Edwards on several occasions.  During one such interview, Internal Affairs advised Ms. Edwards that in the course of their investigation, one of the Officer Defendants had claimed that the reason Ms. Edwards was restrained and struck repeatedly was because she had reached for an officer's service weapon.  This claim was completely false and was calculated to conceal and cover-up the Officer Defendants' legally unjustified use of force.

32.     Following the May 28, 2019, incident and Ms. Edwards' filing of an Internal Affairs report, local law enforcement officers have subjected Ms. Edwards to traffic stops on approximately five occasions, and have acted with open and obvious hostility toward her during those stops.

33.     At some point during the string of traffic stops to which Ms. Edwards was subjected, she was advised, by the instructor of a driver's safety course she took, that law enforcement's record on her included a notation that she was known or observed to fight police officers.

34.     Given that Ms. Edwards had never fought any police officers, or been advised that she had a record for doing so, it was clear to her that the inaccurate record was both new and created by the Officer Defendants in retaliation for Ms. Edwards' filing of her Internal Affairs report.

35.     Further, the creation of the noted inaccurate record also served as a means of endangering Ms. Edwards and intimidating her into abandoning any further legal action against

the State, the County, Sheriff High, or the Officer Defendants.  In effect, the record ensured that future law enforcement officers who made contact with Ms. Edwards would immediately view her as a threat to their safety, thereby increasing the likelihood that force would be unjustifiably used against her.

36.     On or about May 26, 2020, Ms. Edwards received a closure letter from Internal Affairs, dated May 22, 2020, advising her that the investigation into her report resulted in several officers of the Prince George's County Sheriff's Office being assessed with exceedingly slight measures of discipline.

37.     Regarding Corporal McGriff, the closure letter showed that she had been disciplined with eight hours of leave forfeiture for "Reporting Use of Force and/or Weapons Discharge Incidents[,]" that she was assessed a $50 fine and a $300 fine for "Policy & Procedures, Body Worn Camera[,]" and that she was given a written reprimand for "Unsatisfactory Performance[.]"

38.     With respect to DFC Fogarty, the closure letter showed that he had been disciplined with eight hours of leave forfeiture for "Reporting Use of Force and/or Weapons Discharge Incidents[,]" that he was assessed a $50 fine for "Policy & Procedures, Body Worn Camera[,]" and that he received a written reprimand for "Unsatisfactory Performance[.]"

39.     Notably, the issue of "Use of Force, Policies" was found to be "Non-Sustained" as to both Corporal McGriff and DFC Fogarty, and so neither of the Officer Defendants received any professional discipline for forcibly restraining and battering Ms. Edwards.

### COUNT I
**Violation of 42 U.S.C. § 1983 – Excessive Force**
**[Against the Officer Defendants]**

40.     Plaintiff re-alleges all paragraphs of this Complaint as if set forth fully herein.

41.    This cause of action is to redress the deprivation under color of law the rights secured to Plaintiff by the Fourth and Fourteenth Amendments to the United States Constitution.

42.    The Officer Defendants, at all times relevant to this complaint, worked as law enforcement officers with the Prince George's County Sheriff's Office.

43.    The Officer Defendants, acted under color of law and deprived Plaintiff of the rights guaranteed to her by the Fourth and Fourteenth Amendments, including but not limited to the right to be free from the use of unwarranted and excessive force by those cloaked in the authority of the State.

44.    Plaintiff had a protected property and liberty interest in her freedom, her ability to exercise free will and domain over her person, her bodily integrity and personal security, and her ability to be free from unlawful and unwelcome violation of her person by the police.

45.    The Officer Defendants deprived Plaintiff of these liberties and rights when they forcibly restrained Plaintiff, shoved her, and repeatedly punched her in the face.

46.    The Officer Defendants' acted with ill-will and actual malice when they restrained, shoved, and punched Plaintiff.

47.    The Officer Defendants' restraint and battering of Plaintiff served no law enforcement purpose and was not in response to any provocation or threat to officer safety, rather the Officer Defendants' actions were motivated by anger and an intent to harm Plaintiff.

48.    As a proximate result of the above-described actions of the Officer Defendants, Plaintiff suffered damages including, but not limited to, pain and suffering, mental and emotional distress, and the deprivation of her constitutional rights.

WHEREFORE, Plaintiff demands judgment against the Officer Defendants for monetary damages, together with interest and the costs of this action, in an amount exceeding Seventy-Five

Thousand Dollars ($75,000.00), attorneys' fees, punitive damages in an amount to be determined

at trial, and such other and further relief as this Court deems just and proper under the

circumstances.

## COUNT 2
### Violation of 42 U.S.C. § 1983 – Deprivation of Liberty
### [Against the Officer Defendants]

49.    Plaintiff re-alleges all paragraphs of this Complaint as if set forth fully herein.

50.    This cause of action is to redress the deprivation under color of law the rights

secured to Plaintiff by the Fourth and Fourteenth Amendments to the United States Constitution.

51.    The Officer Defendants, at all times relevant to this complaint, worked as law

enforcement officers with the Prince George's County Sheriff's Office.

52.    The Officer Defendants, acted under color of law and deprived Plaintiff of the

rights guaranteed to her by the Fourth and Fourteenth Amendments, including but not limited to

the rights to be free from the deprivation of her liberty without due process by those cloaked in

the authority of the State.

53.    Plaintiff had a protected property and liberty interest in her freedom, her bodily

integrity and personal security, and her right to receive due process before her ability to exercise

free will and domain over her person could be infringed upon by State actors.

54.    The Officer Defendants deprived Plaintiff of such property and liberty interest

when they forcibly restrained Plaintiff and then physically subdued her by shoving her and

punching her repeatedly in the face.

55.    The Officer Defendants acted with ill-will and actual malice when they restrained

Plaintiff and subsequently subdued her through the violent means of shoving and punching her

effectively into submission.

11

56.     The Officer Defendants' restraint and battering of Plaintiff served no law enforcement purpose and was not in response to any provocation or threat to officer safety, rather the Officer Defendants' actions were motivated by anger and an intent to harm Plaintiff.

57.     As a proximate result of the above-described actions of the Officer Defendants, Plaintiff suffered damages including, but not limited to, pain and suffering, mental and emotional distress, and the deprivation of her constitutional rights.

WHEREFORE, Plaintiff demands judgment against the Officer Defendants for monetary damages, together with interest and the costs of this action, in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00), attorneys' fees, punitive damages in an amount to be determined at trial, and such other and further relief as this Court deems just and proper under the circumstances.

## COUNT 3
### Violation of 42 U.S.C. § 1983 – Unreasonable Search and Seizure
### [Against the Officer Defendants]

58.     Plaintiff re-alleges all paragraphs of this Complaint as if set forth fully herein.

59.     This cause of action is to redress the deprivation under color of law the rights secured to Plaintiff by the Fourth and Fourteenth Amendments to the United States Constitution.

60.     The Officer Defendants, at all times relevant to this complaint, worked as law enforcement officers with the Prince George's County Sheriff's Office.

61.     The Officer Defendants acted under color of law and deprived Plaintiff of the rights guaranteed to her by the Fourth and Fourteenth Amendments, including but not limited to the rights to be free from unreasonable searches and seizures of her person and property, without a warrant or consent, by those cloaked in the authority of the State.

62.     Plaintiff had a protected property and liberty interest in her freedom and in the security of her person and property from unreasonable, unwarranted searches and seizures.

63.     The Officer Defendants deprived Plaintiff of such property and liberty interest when they, without a warrant or Plaintiff's consent, seized Plaintiff by violently restraining, shoving, and punching her in the face.  The Officer Defendants further deprived Plaintiff of her noted property and liberty interest when DFC Fogarty seized Plaintiff's property and scattered it on the ground while Corporal McGriff restrained her.

64.     The Officer Defendants acted with ill-will and actual malice when they violently restrained and subdued Plaintiff while seizing and scattering her property all without a warrant or consent.

65.     The Officer Defendants' restraint of Plaintiff and scattering of her property served no law enforcement purpose and was not in response to any provocation or threat to officer safety, rather the Officer Defendants' actions were motivated by anger and an intent to harm and intimidate Plaintiff.

66.     As a proximate result of the above-described actions of the Officer Defendants, Plaintiff suffered damages including, but not limited to, pain and suffering, mental and emotional distress, and the deprivation of her constitutional rights.

WHEREFORE, Plaintiff demands judgment against the Officer Defendants for monetary damages, together with interest and the costs of this action, in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00), attorneys' fees, punitive damages in an amount to be determined at trial, and such other and further relief as this Court deems just and proper under the circumstances.

### COUNT 4
**Violation of 42 U.S.C. § 1983 - Interference with Medical Treatment**

**[Against the Officer Defendants]**

67.    Plaintiff re-alleges all paragraphs of this Complaint as if set forth fully herein.

68.    This cause of action is to redress the deprivation under color of law the rights secured to Plaintiff by the Fourteenth and Eighth Amendments to the United States Constitution.

69.    The Officer Defendants, at all times relevant to this complaint, worked as law enforcement officers with the Prince George's County Sheriff's Office.

70.    The Officer Defendants acted under color of law and deprived Plaintiff of the rights guaranteed to her by the Fourteenth and Eighth Amendments, including but not limited to the right to receive necessary medical treatment free from obstruction by those cloaked in the authority of the State.

71.    As the Officer Defendants walked with Plaintiff toward Mr. Famudi's vehicle so that she could retrieve her property, they observed her struggle to breathe as she suffered from a flare up of her asthma, and so they called for an ambulance.

72.    Prior to the ambulance's arrival, and despite knowing that Plaintiff was having significant difficulty breathing, the Officer Defendants acted to physically restrain her after she simply asked why DFC Fogarty was putting on gloves as Plaintiff removed her property from Mr. Famudi's car.

73.    Thereafter, prior to the summoned ambulance's arrival, and despite the fact that Plaintiff was not resisting or acting in a threatening manner toward the officers, Corporal McGriff shoved and punched Plaintiff in the face numerous times.

74.    After Plaintiff had been restrained and battered by the Officer Defendants, the ambulance that had originally been summoned as aid for her finally arrived.

75.     Despite the fact that the medical assistance called for on Plaintiff's behalf was now on-site, the Officer Defendants spoke with the personnel inside the ambulance before they could even observe Plaintiff's condition.

76.     Shortly after the Officer Defendants spoke with the ambulance personnel, the ambulance drove away without ever evaluating or treating Plaintiff with respect to either the complications from her asthma or the injuries she incurred from having been assaulted and restrained by the Officer Defendants just before the ambulance's arrival.

77.     The Officer Defendants violated Plaintiff's right to receive prompt and adequate emergency medical treatment by turning away the ambulance that was in the process of responding to the call for emergency service related to the extreme breathing difficulties Plaintiff was experiencing as a result of a flare up of her asthma.

78.     Such obstruction of emergency personnel by the Officer Defendants demonstrated their deliberate indifference to the exacerbation of Plaintiff's asthma, an objectively serious medical condition that left her struggling to breathe, and the injuries inflicted when the Officer Defendants restrained, shoved, and punched her.

79.     In effect, the Officer Defendants' intervention in, and interference with, the provision of emergency medical services constituted the deprivation of Plaintiff's right to prompt and adequate medical care.

80.     The Officer Defendants acted with ill-will and actual malice when they interfered with Ms. Edwards' ability to receive medical evaluation and treatment for her asthma and the injuries inflicted upon her by the Officer Defendants.

81. The Officer Defendants' interference with Ms. Edwards' ability to receive prompt medical evaluation and treatment served no law enforcement purpose, rather the Officer Defendants' actions were motivated by anger and an intent to harm Plaintiff.

82. The Officer Defendants' actions were the proximate cause of injuries to Plaintiff.

83. As a proximate result of the Officer Defendants' actions, as described above, Plaintiff suffered damages including, but not limited to, pain and suffering, mental and emotional distress, and the deprivation of her constitutional rights.

WHEREFORE, Plaintiff demands judgment against the Officer Defendants for monetary damages, together with interest and the costs of this action, in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00), attorneys' fees, punitive damages in an amount to be determined at trial, and such other and further relief as this Court deems just and proper under the circumstances.

## COUNT 5
### Violation of 42 U.S.C. § 1983 – Supervisory Liability
### [Against Sheriff High]

84. Plaintiff re-alleges all paragraphs of this Complaint as if set forth fully herein.

85. At all times relevant to this Complaint, Sheriff High acted under color of law as the Prince George's County Sheriff and, in that position, had a duty to supervise and manage the officers of the Prince George's County Sheriff's Office, including the Officer Defendants.

86. Given that Plaintiff immediately complained of the excessive force used against her by the Officer Defendants and spoke numerous times with Internal Affairs investigators, Sheriff High knew or should have known about the unprovoked and unlawful use of force by the Officer Defendants, who were, at all relevant times, under his command and supervision.

Further, Sheriff High knew or should have known that the actions of the Officer Defendants infringed upon the rights guaranteed to Plaintiff by the Maryland and United States constitutions.

87.     The complete lack of any professional discipline in response to the Officer Defendants' use of unlawfully excessive force, even after a purportedly full investigation by Internal Affairs, demonstrates that Sheriff High was deliberately indifferent toward, or tacitly authorized, the use of force the Officer Defendants employed against Plaintiff.

88.     The absence of discipline for the Officer Defendants' use of unlawfully excessive force establishes that Sheriff High permits such use of force by officers of the Prince George's County Sheriff's Office, and that the Officer Defendants would have relied on such permission when they took the actions of forcibly restraining, shoving, punching, and threatening Plaintiff with deadly force.  In effect, the force used against Plaintiff was the direct result of Sheriff High's allowance of such practices by the officers under his command and supervision.

WHEREFORE, Plaintiff demands judgment against Sheriff High for monetary damages, together with interest and the costs of this action, in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00), punitive damages in an amount to be determined at trial, and such other and further relief as this Court deems just and proper under the circumstances.

### COUNT 6
### Battery
### [Against the Officer Defendants]

89.     Plaintiff re-alleges all paragraphs of this Complaint as if set forth fully herein.

90.     The Officer Defendants, at all times relevant to this complaint, worked as law enforcement officers with the Prince George's County Sheriff's Office.

91.     The Officer Defendants intentionally touched Plaintiff in a harmful, offensive, and inappropriate manner.

92.     Specifically, the Officer Defendants, forcibly restrained Plaintiff, shoved Plaintiff to the ground, and punched her in the face numerous times.

93.     In physically detaining and beating Plaintiff, the Officer Defendants acted without a warrant, probable cause, warning, or consent, and were not responding to any sort of provocation or threatening act by Plaintiff.

94.     The Officer Defendants took the above-described actions deliberately, with ill-will and actual malice, and without legal justification.

95.     The Officer Defendants' actions of physically restraining and beating Plaintiff served no law enforcement purpose and were not in response to any provocation or threat to officer safety, rather the Officer Defendants' actions were motivated by anger and an intent to harm Plaintiff.

96.     As a direct and proximate result of the Officer Defendants' battery of Plaintiff, she suffered damages in the form of fear and apprehension of imminent bodily harm, actual bodily harm, physical and emotional pain and suffering, humiliation, and medical costs.

97.     At all times relevant hereto the Officer Defendants acted in their official capacities as officers of the Prince George's County Sheriff's Office.

WHEREFORE, Plaintiff demands judgment against the Officer Defendants for monetary damages, together with interest and the costs of this action, in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00), punitive damages in an amount to be determined at trial, and such other and further relief as this Court deems just and proper under the circumstances.

### COUNT 7
**False Imprisonment**
**[Against the Officer Defendants]**

98.     Plaintiff re-alleges all paragraphs of this Complaint as if set forth fully herein.

99.     Without consent, probable cause, or legal justification, the Officer Defendants falsely imprisoned Plaintiff by using excessive force to physically restrain and beat her into submission.

100.    After Plaintiff retrieved items of her property from Mr. Famudi's car, the Officer Defendants intentionally, and without a warrant, provocation, or threat to their safety, restricted Plaintiff's movement by physically restraining and battering her, thereby depriving her of her freedom and liberty of movement.

101.    The Officer Defendants acted deliberately, and with ill-will and actual malice, when they took the above-described actions.

102.    The Officer Defendants' actions of physically restraining and beating Plaintiff into submission served no law enforcement purpose and were not in response to any provocation or threat to officer safety, rather the Officer Defendants' actions were motivated by anger and an intent to harm and intimidate Plaintiff.

103.    As a direct and proximate result of the Officer Defendants' deprivation of Plaintiff's liberty, she suffered damages, including but not limited to physical pain and suffering, emotional distress, humiliation, and medical costs.

104.    At all times relevant hereto, the Officer Defendants were acting in their official capacities as officers of the Prince George's County Sheriff's Office.

WHEREFORE, Plaintiff demands judgment against the Officer Defendants for monetary damages, together with interest and the costs of this action, in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00), punitive damages in an amount to be determined at trial, and such other and further relief as this Court deems just and proper under the circumstances.

## COUNT 8

## Violation of Article 24 of the Maryland Declaration of Rights – Excessive Force and Deprivation of Liberty
### [Against the State, the County, and the Officer Defendants]

105.    Plaintiff re-alleges all paragraphs of this Complaint as if set forth fully herein.

106.    The Officer Defendants used unreasonable, unnecessary and excessive force in the treatment of Plaintiff when they forcibly restrained Plaintiff, shoved her to the ground, and repeatedly punched her in the face.

107.    The Officer Defendants' actions of restraining and battering Plaintiff were unjustified and a deprivation of Plaintiff's liberty, freedom of movement, and bodily integrity.

108.    The above-described actions of the Officer Defendants injured Plaintiff in violation of the rights guaranteed to her by Article 24 of the Maryland Declaration of Rights, specifically, her rights to due process and to be free from the use of excessive force.

109.    In restraining and viciously beating Plaintiff, the Officer Defendants acted with ill-will, actual malice, and the intent of violating the rights guaranteed to Plaintiff by Article 24 of the Maryland Declaration of Rights.  Such rights include, but are not limited to, Plaintiff's rights to enjoy freedom of movement, and to be free from the use of excessive force and the unlawful restriction of her liberty.

110.    The Officer Defendants' actions of physically restraining and beating Plaintiff served no law enforcement purpose and were not in response to any provocation or threat to officer safety, rather the Officer Defendants' actions were motivated by anger and an intent to harm Plaintiff.

111.    As a direct and proximate result of the Officer Defendants' use of excessive force, violation of Plaintiff's right to due process, and deprivation of Plaintiff's liberty, Plaintiff

suffered damages including but not limited to physical pain and suffering, emotional distress, humiliation, and medical costs.

112. At all times relevant hereto the Officer Defendants were acting in their official capacities as officers of the Prince George's County Sheriff's Office.

113. The County and the State are vicariously liable for the actions of the Officer Defendants.

WHEREFORE, Plaintiff demands judgment against the County, the State, and the Officer Defendants for monetary damages, together with interest and the costs of this action, in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00), punitive damages in an amount to be determined at trial, and such other and further relief as this Court deems just and proper under the circumstances.

## COUNT 9
**(Violation of Article 26 of the Maryland Declaration of Rights – Excessive Force and Unlawful Seizure)**
**[Against the State, the County, and the Officer Defendants]**

114. Plaintiff re-alleges all paragraphs of this Complaint as if set forth fully herein.

115. The Officer Defendants used unreasonable, unnecessary, and excessive force in the treatment of Plaintiff when they forcibly restrained her, shoved her to the ground, and repeatedly punched her in the face.

116. The Officer Defendants unlawfully seized Plaintiff when, without a warrant or legal justification, they forcefully subdued her through their actions of physically restraining Plaintiff, shoving her to the ground, and beating her into submission.

117. DFC Fogarty unlawfully seized Plaintiff's property when he handled and scattered Plaintiff's possessions without a warrant, consent, or legal justification, and while Plaintiff was being restrained and separated from her property by Corporal McGriff.

118.    The above-described actions of the Officer Defendants injured Plaintiff in violation of the rights guaranteed to her by Article 26 of the Maryland Declaration of Rights, specifically, her rights to be free from the use of excessive force and from unreasonable and unlawful searches and seizures.

119.    The Officer Defendants took the above-described actions with ill-will, actual malice, and with the intent of violating the rights guaranteed to Plaintiff by Article 26 of the Maryland Declaration of Rights, including but not limited to her rights to be free from the use of excessive force and to be free from unreasonable and unlawful searches and seizures.

120.    The Officer Defendants' actions of physically restraining and beating Plaintiff into submission served no law enforcement purpose and were not in response to any provocation or threat to officer safety, rather the Officer Defendants' actions were motivated by anger and an intent to harm Plaintiff.

121.    As a direct and proximate result of the Officer Defendants' unlawful use of excessive force and their violation of Plaintiff's right to be free from unreasonable searches and seizures, Plaintiff suffered damages including but not limited to physical pain and suffering, emotional distress, humiliation, and medical costs.

122.    At all times relevant hereto the Officer Defendants were acting in their official capacities as officers of the Prince George's County Sheriff's Office.

123.    The County and the State are vicariously liable for the actions of the Officer Defendants.

WHEREFORE, Plaintiff demands judgment against the County, the State, and the Officer Defendants for monetary damages, together with interest and the costs of this action, in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00), punitive damages in an amount

to be determined at trial, and such other and further relief as this Court deems just and proper under the circumstances.

## COUNT 10
**Intentional Infliction of Emotional Distress**
**[Against the State, the County, and the Officer Defendants]**

124.     Plaintiff re-alleges all paragraphs of this Complaint as if set forth fully herein.

125.     Plaintiff was deliberately and extensively victimized by the Officer Defendants.

126.     At the time when Plaintiff encountered the Officer Defendants, she was not the subject of any warrant, nor did the Officer Defendants observe her engaging in any criminal activity. As such, Plaintiff could not have been under the impression that the Officer Defendants would have viewed or treated her in an adversarial manner, and had no reason to act as if that were the case.

127.     Under the circumstances, Plaintiff logically believed that the Officer Defendants would, as they indicated to her, simply oversee her retrieval of her property from Mr. Famudi's vehicle.

128.     Instead, without provocation, and knowing that Plaintiff was suffering from an acute flare up of her asthma, the Officer Defendants employed shockingly excessive force by physically restraining Plaintiff after she merely asked why DFC Fogarty was putting on gloves as if he were preparing to take hold of Plaintiff's property. The Officer Defendants' assault on Plaintiff's person was made all the more outrageous by the fact that her question was well-warranted given that the Officer Defendants had expressed to her that they would merely be supervising her removal of her property from Mr. Famudi's vehicle.

129.     Thereafter, Corporal McGriff, without provocation or any threat to officer safety, exercised wholly unjustified and startling levels of force against Plaintiff by shoving her to the

ground and punching her repeatedly into submission.  Moreover, Corporal McGriff continued to terrorize Plaintiff when, in response to Plaintiff attempting to capture video of the Officer Defendants with her cellphone, she clearly threatened to use deadly force by openly and pointedly putting her hand on her service weapon as she faced Plaintiff.

130.    Aggravating matters further, the Officer Defendants actively frustrated Plaintiff's ability to receive medical evaluation and treatment for both her asthma-related shortness of breath and her injuries from the battering she suffered at the hands of the Officer Defendants.  To wit, the Officer Defendants interfered with, and sent away, the ambulance that responded to the call for emergency services placed on Plaintiff's behalf.

131.    Further, the Officer Defendants deliberately added to Plaintiff's trauma from the above-described incident when they took the step of ensuring that law enforcement's record on Plaintiff included the wholly false notation that she had been known or seen to fight police officers.

132.    Subsequently, and as intended by the Officer Defendants, the noted false record resulted in Plaintiff being treated with open and unwarranted hostility by local law enforcement officers during traffic stops.

133.    The Officer Defendants purposefully fabricated the noted record with full knowledge that the subsequent treatment Plaintiff would receive from law enforcement would serve as a means of intimidating her into abandoning any legal action against the Officer Defendants, the County, the State, and Sheriff High.  Moreover, the Officer Defendants also knew, or should have known, that the type of record they fabricated would drastically increase the likelihood that law enforcement officers would use force against Plaintiff in the future.

134.   The Officer Defendants' actions of physically restraining and battering Plaintiff, obviously threatening to use deadly force, interfering with emergency medical care summoned for Plaintiff, and fabricating records for the purpose of intimidating and endangering Plaintiff, were not only intentional and reckless, but were also extreme and outrageous.

135.   As a direct result of the above-described shockingly vicious use of excessive force, deliberate acts to deprive Plaintiff of medical care, and documentation of damaging falsehoods with the express aim of intimidating Plaintiff, Plaintiff experienced and continues to experience severe emotional distress, mental anguish, fear of continued retaliation, and humiliation.

136.   Plaintiff's injuries were directly and proximately caused by the actions of the Officer Defendants, individually and as agents of the Prince George's County Sheriff's Office.

137.   The County and the State are vicariously responsible for the actions of the Officer Defendants.

WHEREFORE, Plaintiff demand judgment against the County, the State, and the Officer Defendants for monetary damages, together with interest and the costs of this action, which damages exceed Seventy-Five Thousand Dollars ($75,000.00), and punitive damages in an amount to be determined at trial, and such other and further relief as the nature of the case may require and that this Honorable Court shall deem just and proper.

## JURY DEMAND

Plaintiff demands a jury trial as to all counts so triable.

Timothy F. Maloney

Respectfully Submitted,

JOSEPH, GREENWALD & LAAKE, P.A.

By: _____

Timothy F. Maloney, CPF #8606010245
tmaloney@jgllaw.com
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
(301) 220-2200 (tel.)
(301) 220-1214 (fax)
*Counsel for Plaintiff*

Upper Marlboro, Maryland 20772

and

**DEPUTY FIRST CLASS FOGARTY**
**(BADGE #516)**
**OF THE PRINCE GEORGE'S COUNTY**
**SHERIFF'S OFFICE**
Individually, and in his Official Capacity as a
Prince George's County Deputy Sheriff
Prince George's County Sheriff's Office
5303 Chrysler Way
Upper Marlboro, Maryland 20772

    Defendants.

              :
              :
              :

---

<u>**LINE**</u>

Dear Clerk,

   Please issue summonses to the above-named Defendants and return them to the

undersigned counsel for service by private process.

           Respectfully Submitted,

           JOSEPH, GREENWALD & LAAKE, P.A.

           By: _____
           Timothy F. Maloney, CPF #8606010245
           tmaloney@jgllaw.com
           6404 Ivy Lane, Suite 400
           Greenbelt, Maryland 20770
           (301) 220-2200 (tel.)
           (301) 220-1214 (fax)
           *Counsel for Plaintiff*