IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| **COURTNEY EDWARDS** | * | |
|  | * | Case No.: GJH-22-1777 |
| Plaintiff, | | |
| v. | * | |
| **STATE OF MARYLAND,** *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Courtney Edwards brings this civil action against Defendants Deputy Corporal McGriff, Deputy First Class Fogarty, Sheriff Melvin C. High, Prince George's County, Maryland, and the State of Maryland for violations of the Fourth, Eighth, and Fourteenth Amendments under 42 U.S.C. § 1983, supervisory liability, battery, false imprisonment, excessive force, and intentional infliction of emotional distress. ECF No. 2. Pending before the Court is Defendants' Partial Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted and Defendants' Motion to Strike, ECF No. 4. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Defendants' Motion is granted in part and denied in part.

**I.   BACKGROUND[1]**

Plaintiff is a resident of Prince George's County, Maryland. ECF No. 2 ¶ 5. Individual Defendants include Melvin C. High, sheriff of Prince George's County, along with Corporal

---

[1] Unless stated otherwise, all facts are taken from Plaintiff's Complaint or documents attached to and relied upon in the Complaint and are accepted as true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

McGriff and Deputy First Class Fogarty (the "Officers" or "Officer Defendants"), each deputy sheriffs who were on the scene on the day in question. *Id.* ¶¶ 7–9. Defendants also include the municipal corporation of Prince George's County and the State of Maryland. *Id.* ¶¶ 6, 10–11.

On May 28, 2019, the Officer Defendants responded to a domestic disturbance call following an argument between Plaintiff and her then-boyfriend Hakeem Famudi at the Woodsprings Suites in Prince George's County, Maryland. *Id.* ¶¶ 12–13. Famudi sought to leave the hotel, and the Officers agreed to accompany Plaintiff to the parking lot to retrieve her belongings from Famudi's vehicle. *Id.* ¶ 14. Plaintiff alleges that she began to suffer breathing problems due to her asthma on the way down to the parking lot, and the Officers called an ambulance for Plaintiff. *Id.* ¶ 15. All parties proceeded to the parking lot, where Plaintiff began removing her belongings from the vehicle. *Id.* ¶ 16. While Plaintiff was removing her property from the vehicle, Defendant Fogarty purportedly put gloves on his hands and then restrained Plaintiff by holding her arms behind her back. *Id.* Plaintiff repeatedly asked why she was being restrained and if she was under arrest; Defendant Fogarty replied "no." *Id.* ¶ 17. Famudi attempted to intervene but was advised by Defendant McGriff that he needed to drive away and go to work, which he did. *Id.* ¶ 18. Defendant McGriff then put gloves on and proceeded to restrain Plaintiff. *Id.* ¶ 19. Defendant Fogarty picked up two bins of clothing that Plaintiff had retrieved from Famudi's vehicle and emptied them in the parking lot, and Defendant McGriff shoved Plaintiff toward her belongings. *Id.* ¶¶ 20–21. As the Officers left, Plaintiff made a hand gesture to indicate she was waving them away. *Id.* ¶ 22. In response, Defendant McGriff allegedly turned around, walked back to Plaintiff, and punched Plaintiff in the face, knocking her to the ground, at which point McGriff continued to punch Plaintiff several more times. *Id.* When Plaintiff then attempted to record a video of Officer Defendants with her phone, Defendant

McGriff slapped the phone from her hand. *Id.* ¶ 23. Plaintiff tried again to make a video recording, at which point Defendant McGriff purportedly put her hand on her service weapon, which Plaintiff interpreted as a threat that McGriff "was prepared to employ deadly force." *Id.* Soon after, the ambulance arrived, and the Officer Defendants spoke to ambulance personnel, at which point the ambulance left without examining or treating Plaintiff. *Id.* ¶ 25.

Plaintiff subsequently called a second ambulance, which took her to the University of Maryland Prince George's Hospital Center, where she received treatment for injuries to her face and eye. *Id.* ¶ 29. While at the hospital, Plaintiff reported her encounter to the Internal Affairs Division of the Sherriff's Office. *Id.* ¶ 30. An internal investigation took place, and the Officer Defendants were later disciplined. *Id.* ¶¶ 37–39. Plaintiff also alleges that she subsequently learned that her police record now indicated that she "was known or observed to fight police." *Id.* ¶ 33.

On May 26, 2022, Plaintiff filed her Complaint in Prince George's County Circuit Court. ECF No. 1-2 at 1.[2] On July 19, 2022, Defendants removed the case to this Court on the grounds that Counts I–V allege a deprivation of rights under the U.S. Constitution. *Id.* at 2. Plaintiff's Complaint contains ten counts of misconduct: excessive force (Fourth and Fourteenth Amendments); deprivation of liberty (Fourth and Fourteenth Amendments); unreasonable search and seizure (Fourth and Fourteenth Amendments); interference with medical treatment (Eighth and Fourteenth Amendments); supervisory liability (42 U.S.C. § 1983); battery; false imprisonment; excessive force and deprivation of liberty (Article 24 of the Maryland Declaration of Rights); excessive force and unlawful seizure (Article 26 of the Maryland Declaration of Rights); and intentional infliction of emotional distress. ECF No. 2. On August 15, 2022,

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

3

Defendants filed a Partial Motion to Dismiss and Motion to Strike. ECF No. 4. Plaintiff responded, ECF No. 6, and Defendants replied, ECF No. 7.

## II.     STANDARD OF REVIEW

### A. Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Carp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Reverie v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations

devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### B. Motion to Strike

Rule 12(f) permits the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *See Gilman & Bedigian, LLC v. Sackett*, 337 F.R.D. 113, 116 (D. Md. Sept. 4, 2020). Striking a portion of a pleading is a drastic remedy that is generally disfavored by courts. *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). In determining whether to grant a motion to strike, a court "enjoys wide discretion … in order to minimize delay, prejudice and confusion by narrowing the issues for discovery and trial." *Haley Paint Co. v. E.I. du Pont de Nemours & Co.*, 279 F.R.D. 331, 336 (D. Md. 2012).

"When reviewing a motion to strike, 'the court must view the pleading under attack in a light most favorable to the pleader.'" *Piontek v. Serv. Ctrs. Corp.*, PJM 10–1202, 2010 WL 4449419, at *8–9 (D. Md. Nov. 5, 2010) (citation omitted). Rule 12(f) motions ordinarily "will be denied unless the matter under challenge has 'no possible relation to the controversy and may prejudice the other party.'" *U.S. ex rel. Ackley v. Int'l Bus. Machines Corp.*, 110 F. Supp. 2d 395, 406 (D. Md. 2000) (quoting *Steuart Inv. Co. v. Bauer Dredging Constr. Co.*, 323 F. Supp. 907, 909 (D. Md. 1971).

### III. DISCUSSION

Defendants seek to dismiss four of Plaintiff's ten counts and to strike certain material from the Complaint as "scandalous and impertinent." *See* ECF No. 4.

A. **Motion to Dismiss**

   1. **Count II – Fourth and Fourteenth Amendment Deprivation of Liberty Claim Under § 1983**

Defendants first seek to dismiss Count II of Plaintiff's Complaint, which alleges deprivation of liberty against the Officer Defendants, arguing that such a claim does not extend to the actions alleged in the Complaint—here, the Officers' physical restraint and assault of the Plaintiff. ECF No. 4-1 at 5–6. Plaintiff argues that she has adequately pled a substantive due process violation because the Officer Defendants encroached on her freedom, bodily integrity, and personal security, and acted with an alleged intent to harm. ECF No. 6 at 8–9.

Section 1983 permits the filing of a civil action against a "person" acting under color of state law who causes a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Nonetheless, section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017). A section 1983 suit involves two inquiries: first, whether the plaintiff has been deprived of a right, privilege, or immunity secured by the Constitution or a federal law; and second, whether the deprivation was caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Under the Fourteenth Amendment, the Due Process Clause protects individuals from state actions that would "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. xiv. The Clause may provide substantive rights that protect "individual liberty against certain government actions regardless of the fairness of the procedures used to

implement them." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (internal citation and quotation marks omitted).

However, courts have determined that "the Due Process Clause is not the proper lens through which to evaluate law enforcement's pretrial missteps." *Safar*, 859 F.3d at 245. Indeed, it is the Fourth Amendment that protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. iv. Thus, the Fourth Amendment, unlike some "more generalized notion of due process," provides "an explicit textual source of constitutional protection against unreasonable seizures and arrests." *Safar*, 859 F.3d at 245 (quoting *Graham v. Connor*, 490 U.S. 386, 395) (internal marks omitted). This includes pleadings regarding the seizure of a person, which "can take the form of 'physical force' or a 'show of authority' that 'in some way restrain[s] the liberty' of the person." *Torres v. Madrid*, 141 S. Ct. 989, 995 (2021) (quoting *Terry v. Ohio*, 392 U.S. 1, 19, n.16).

Here, Plaintiff alleges that she was "forcibly restrained" by the Officer Defendants and "physically subdued" through "shoving" and "punching." ECF No. 2 ¶ 54. These allegations are more appropriately considered under the Fourth Amendment's prohibition on unlawful seizure, as Plaintiff has alleged in Count III of her Complaint.[3] Although Defendants in their Reply brief take issue with Plaintiff's allegation that she was unconstitutionally seized, *see* ECF No. 7 at 3, they have not moved to dismiss Count III, and thus the Court will reserve discussion on the matter for another time.

Accordingly, the Court finds that Count II, read as a substantive due process claim, is not cognizable and will be dismissed.

### 2. Count IV – Eighth and Fourteenth Amendment Interference with Medical Treatment Claim Under § 1983

---

[3] Plaintiff also seeks to vindicate her Fourth Amendment rights through a claim of excessive force (Count I). Defendants have not sought to dismiss this claim, nor her claim for unlawful seizure.

Defendants argue that Plaintiff has failed to allege a claim of interference with medical treatment because Plaintiff was not in custody when Officer Defendants turned the ambulance away, and thus the Officers had no duty to Plaintiff when the alleged interference occurred. ECF No. 4-1 at 6. Plaintiff argues that she has met the pleading requirements for the claim as required by law: she was suffering a serious medical need during her police encounter, and the Officer Defendants were aware of the need yet failed to ensure care was provided. ECF No. 6 at 10–11.

Typically, to bring a claim for a substantive due process violation under the Fourteenth Amendment, a Plaintiff must demonstrate that the government's conduct shocks the conscience, such as by showing actions "intended to injure in some way unjustifiable." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998). However, when the state has a special relationship with an individual, it may not be deliberately indifferent to that individual's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976). In this context, the Fourth Circuit analyzes Fourteenth Amendment claims for inadequate medical care under the lower "deliberate indifference" standard. *Patten v. Nichols*, 274 F.3d 829, 834 (4th Cir. 2001) (citing *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001)). Thus, "a lower level duty of culpability may amount to a substantive due process violation in those situations where the government is required 'to take care of those who have already been deprived of their liberty'—such as pretrial detainees, persons in mental institutions, convicted felons, and persons under arrest." *Slaughter v. Mayor & City Council of Baltimore*, 682 F.3d 317, 321 (4th Cir. 2012) (quoting *Collins*, 503 U.S. at 127). To satisfy this standard, a plaintiff must show "objectively, that she was suffering from a serious medical need and that, subjectively, the defendants were aware of the need for medical attention but failed either to provide it or to ensure that the needed care was made available." *Middleton v.*

*Baltimore City Police Dep't*, No. CV ELH-20-3536, 2022 WL 268765, at *30 (D. Md. Jan. 28, 2022) (collecting cases).

Defendants argue that Plaintiff's claim fails as a matter of law because she was not under arrest or otherwise in custody at the time that the purported medical interference took place. Yet courts have defined the custodial relationship somewhat expansively: "[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs ... it transgresses the substantive limits on state action." *Waybright v. Frederick Cnty., MD*, 528 F.3d 199, 207 (4th Cir. 2008) (quoting *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 200 (1989)). This has included "pretrial detainees, persons in mental institutions, convicted felons, and persons under arrest," *Slaughter*, 682 F.3d at 321, but the list is "non-exhaustive," *Smith v. City of Greensboro*, No. 1:19CV386, 2020 WL 1452114, at *15 (M.D.N.C. Mar. 25, 2020). Custody, in this context, rests instead on an "affirmative act by the state that restrains the ability of an individual to act on his own behalf." *Id.* (quoting *Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005)); *see also Tarashuk v. Orangeburg Cnty.*, No. 5:19-CV-02495-JMC, 2022 WL 969752, at *5 (D.S.C. Mar. 30, 2022) ("The question of custody turns on whether [the individual] was rendered incapable of caring for himself.").

Here, Plaintiff has alleged that during her encounter with the Officer Defendants, she began to have "significant difficulty breathing" due to an asthma flare-up. ECF No. 2 ¶¶ 71–72. The Officer Defendants responded by calling an ambulance. *Id.* ¶ 71. Prior to the ambulance's arrival, Plaintiff alleges that the Officer Defendants physically restrained her, and that Defendant McGriff shoved her and punched her in the face multiple times. *Id.* ¶¶ 72–73. When the

9

ambulance arrived, the Officer Defendants purportedly went to speak with the medical personnel, and the ambulance drove off without evaluating or treating the Plaintiff. *Id.* ¶ 76.

Taking Plaintiff's well-pleaded allegations as true, the Court finds that there is at least a question of fact as to whether Plaintiff was in the custody of officers leading up to and during the arrival of the ambulance, and thus, the Court declines to dismiss the claim at this time.[4]

### 3. Count V – Supervisory Liability Claim Under § 1983

Defendants argue that Plaintiff has failed to show that Defendant High is liable under a claim for supervisory liability. Relevant here, they assert that Plaintiff has provided no evidence of past abuse by the Officer Defendants, and thus Plaintiff has not shown that High, as sheriff, had actual or constructive knowledge of illegal or unethical conduct by his subordinates. ECF No. 4-1 at 7–8. Plaintiff argues that Defendant High's knowledge of the Officer Defendants' conduct in this matter and the lack of discipline imposed are sufficient to demonstrate supervisory liability, and to show a causal connection between High's inaction and Plaintiff's constitutional injuries. ECF No. 6 at 13–14.

Supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates. *See Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.1984), *cert. denied*, 470 U.S. 1035 (1985). To prevail on this claim, a plaintiff must establish: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show

---

[4] To the extent that Plaintiff alleges that Office Defendants acted with "ill-will and actual malice" in waving off the ambulance, ECF No. 2 ¶ 80, the issue of custody may not be entirely dispositive. If it is determined that Plaintiff was not in custody, a finder of fact may still need to evaluate the conduct under a shocks-the-conscience standard, as noted above. *C.f. Smith*, 2020 WL 1452114, at *15 (holding that plaintiff's Fourteenth Amendment claim "hinges on whether [plaintiff] was 'in custody'" because "the complaint does *not* appear to contain any allegations of an actual intent to injure") (emphasis added).

10

"deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.1994).

To satisfy the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. *Id.* Generally, courts look to whether a plaintiff has alleged "facts showing that the [defendants'] conduct is widespread, or at least has been used on several different occasions, and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Johnson v. Baltimore Police Dep't*, 452 F. Supp. 3d 283, 305 (D. Md. 2020) (quoting *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014)) (internal marks omitted); *see also Burley v. Baltimore Police Dep't*, 422 F. Supp. 3d 986, 1032 (D. Md. 2019). In other words, the issue is whether a supervisor knew or should have known that his officers posed a "threat" based on "allegations of past incidents" that "could have provided … constructive notice." *McDonnell v. Hewitt-Angleberger*, No. CIV.A. WMN-11-3284, 2012 WL 1378636, at *6 (D. Md. Apr. 19, 2012).

Here, Plaintiff alleges that Defendant High knew or should have known about the conduct of the Officer Defendants as a result of an Internal Affairs investigation—the investigation launched by Plaintiff's complaints to the Sherriff's Office. ECF No. 2 ¶ 86. This argument, however, appears circular. The Complaint contains no allegations that the conduct by the Officers at issue here is widespread or pervasive, or that any similar *prior* incidents have occurred, such that Defendant High was or should have been on notice regarding the behavior of his subordinates.

11

Thus, Plaintiff has failed to establish that Defendant High knew or should have known about the Officers' conduct, and the claim for supervisory liability will be dismissed. Because Count V is the only claim against Defendant High, he is no longer party to this suit.

### 4. Count X – Intentional Infliction of Emotional Distress

Defendants argue that Plaintiff has failed to meet the stringent pleading standards required to state a claim for intentional infliction of emotional distress (IIED) as provided by Maryland law. ECF No. 4-1 at 10. Plaintiff asserts that she has adequately pled IIED by showing the extreme nature of the Officer Defendants' actions and the severe emotional distress she has suffered as a result of the conduct. ECF No. 6 at 15–16.

Claims for IIED "are reserved for only the most shocking circumstances where a defendant's extreme and outrageous acts cause plaintiff severe emotional distress." *Jeffries v. Ayoub*, No. 8:17-CV-02973-PX, 2019 WL 3306017, at *7 (D. Md. July 23, 2019) (citing *Tavakoli-Nouri v. State*, 139 Md. App. 716, 728 (2001)). To state a claim for IIED in Maryland, a plaintiff must allege four elements: (1) intentional or reckless conduct; (2) extreme and outrageous conduct; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress. *See Harris v. Jones*, 281 Md. 560, 566 (1977). Relevant here, the second element of an IIED claim is satisfied when the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* 567. The fourth element is met when the plaintiff exhibits "a severely disabling emotional response to the defendant's conduct." *Id.* at 570.

To state a claim for IIED requires clearing a very high bar: such claims are "disfavored, difficult to establish, and as such, rarely viable under Maryland law." *Middleton*, 2022 WL

268765, at *24 (citation and internal quotation marks omitted). "Indeed, to be actionable, the conduct relied upon must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Id.* (quoting *Farasat v. Paulikas*, 32 F. Supp. 2d 244, 248 (D. Md. 1997)) (internal marks omitted).

Here, Plaintiff alleges that the Officer Defendants' actions—including physical restraint and battery, deprivation of medical care, and inclusion of a purportedly false record that Plaintiff "had been known or seen to fight police officers"—constitute extreme and outrageous conduct. ECF No. 2 ¶¶ 128–134. As a result of this conduct, Plaintiff has "experienced and continues to experience severe emotional distress, mental anguish, fear of continued retaliation, and humiliation." *Id.* ¶ 135.

Nevertheless, while these allegations are troubling, the Court does not find that they meet the high standard established under Maryland law. Taking Plaintiff's allegations as true, as the Court is required to do at this stage, the Officer Defendants' actions are disturbing. However, whether such conduct could be characterized as extreme and outrageous does not need to be decided, because the Court finds that Plaintiff's injuries "do not rise to the level of severity necessary to sustain the claim." *Jeffries*, 2019 WL 3306017, at *7 (dismissing claim where plaintiff alleged "difficulty sleeping, … extreme fluctuations in weight, and … difficult[y] [being] in various social settings"); *see also Lehan v. Wilson*, No. GJH-21-00362, 2022 WL 703928, at *12 (D. Md. Mar. 8, 2022) (dismissing claim where plaintiff alleged "conscious pain and suffering, humiliation, embarrassment, emotional trauma, fright, nervousness, indignity, insult, and severe emotion[al] distress"). In other words, Plaintiff has not alleged "that she has been unable to function on a daily basis, even if her functioning is presumably affected by her psychological and physical distress." *Takacs v. Fiore*, 473 F. Supp. 2d 647, 652 (D. Md. 2007)

(dismissing claim where plaintiff alleged "severe depression, anxiety, sleeplessness, headaches and [being] sick to her stomach").

Accordingly, the Court will dismiss this claim.

### B. Motion to Strike

Defendants seek to strike certain allegations in the Complaint as "scandalous and impertinent." ECF No. 4-1 at 13. They argue the allegations, including information about the Internal Affairs investigation conducted following Plaintiff's complaints to the Sherriff's Department, are irrelevant to the legal claims asserted and prejudicial to the Officer Defendants. *Id.* Plaintiff argues that information about the Internal Affairs investigation is both relevant and appropriate for inclusion in this matter, particularly in support of her claim for supervisory liability against Defendant High. ECF No. 6 at 17–18.

As noted above, the Court has discretion to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, such motions are generally disfavored unless the movant is able to meet his burden of showing the challenged material is both immaterial and prejudicial. *Fitchett v. Spartech*, LLC, No. CV JKB-22-0783, 2022 WL 5061867, at *1 (D. Md. Oct. 4, 2022). "Thus, Rule 12(f) motions generally will be not granted unless the challenged allegations have no possible or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to a party." *Gilman & Bedigian, LLC v. Sackett*, 337 F.R.D. 113, 116 (D. Md. 2020) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1382 (3d ed. 2004)).

Here, Plaintiff has made allegations referring to the Internal Affairs investigation conducted by the Sherriff's Department in the wake of Plaintiff's complaints about her treatment

...

...

...

during her encounter with the Officers. ECF No. 2 ¶¶ 30–39. Plaintiff contends that her allegations constitute a necessary element regarding her claim of supervisory liability as to Defendant High. ECF No. 6 at 18–19. For the reasons stated above, the Court finds that claim fails as a matter of law and thus is no longer part of the case. Still, Plaintiff also appears to argue that the information contained in the investigation files "speaks directly to the conduct which forms the basis for the claims in Plaintiff's Complaint." *Id.* at 18. Given this broader observation, the Court does not find that the referenced allegations have "no possible or logical connection" to the Officer Defendants' conduct as it pertains to this suit, nor does the Court find that this material substantially prejudices Defendants at this stage. Moreover, the paragraphs in question contain allegations beyond the scope of the Internal Affairs investigation, the inclusion of which Defendants do not appear to directly dispute.

Accordingly, the Court declines to strike Paragraphs 30–39 of the Complaint at this time.

IV.   **CONCLUSION**

For the foregoing reasons, Defendants' Motion is granted in part and denied in part. A separate Order follows.

Date: <u>January 24, 2023</u>    ____/s/_____
                                 GEORGE J. HAZEL
                                 United States District Judge